IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NELLEY L. MOSS                                                    PLAINTIFF

v.                          Civil No. 2:18-cv-02148-PKH-MEF

ANDREW M. SAUL[1], Commissioner,
Social Security Administration                                   DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Nelley L. Moss, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claim for a period of disability and disability insurance benefits ("DIB") and

supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social

Security Act (the "Act"). In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C.

§ 405(g).

### I.  Procedural Background

Plaintiff protectively filed an application for DIB on May 19, 2016, alleging disability since

March 15, 2016, due to mental problems, heart problems, and high blood pressure. (ECF No. 8, pp.

15, 65, 195-202). For DIB purposes, Plaintiff retained insured status through December 31, 2020.

(*Id*., p. 247). Plaintiff also protectively filed an application for SSI on July 14, 2016. (*Id*., p. 15,

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and
he is substituted as Defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

203-08).  His applications were denied initially on September 15, 2016, and upon reconsideration

on February 22, 2017.  (*Id*., pp. 15, 65-77, 80-96, 97-113).  Plaintiff requested an administrative

hearing (*Id*., pp. 123-24), and the hearing was held on December 13, 2017, before the Hon. Toni

Shropshire, Administrative Law Judge ("ALJ").  (*Id*., pp. 34-63).  Plaintiff was present and

represented by counsel, Ashley Loy. (Id., pp. 15, 35).  A vocational expert ("VE"), Stefanie A. Ford,

was also present and testified at the administrative hearing.  (*Id*.).

Plaintiff was 42 years old at the time of the hearing.  (*Id*., p. 41).  He has a limited education

– completing only the seventh grade (having taken it twice) and attending special education classes.

(*Id*., pp. 38, 362).  He does not have a GED.  (*Id*.).  His last job was at the Walmart deli in 2014-

2015, a job he was terminated from because of tardiness and absenteeism related to his "nerves get

so bad." (Id., p.  43).

By a written decision dated April 4, 2018, the ALJ found Plaintiff had the following severe

impairments: asthma, degenerative joint disease, status-post ankle fracture, anxiety, and depression.

(*Id*., p. 17).  The ALJ determined Plaintiff's impairments did not meet or equal the level of severity

of any impairment in the Listing of Impairments.  (*Id*., pp. 18-19).  The ALJ then found Plaintiff had

the residual functional capacity ("RFC") to perform light work, except:

> "this individual can frequently climb stairs and ladders, balance, stoop, kneel, crouch, and
> crawl.  He can occasionally reach overhead with his right arm and must avoid all pulmonary
> irritants, extreme heat in the workplace, and work around unprotected heights and moving
> mechanical parts.  Non-exertionally, this individual is limited to simple, routine and
> repetitive tasks with interpersonal contact that is incidental to the work performed, wherein
> he can make simple work-related decisions, concentrate, persist and maintain pace with
> normal breaks, with supervision that is simple, direct, and concrete." (*Id*., pp. 20-26).

With the help of the VE, the ALJ determined Plaintiff could not perform his past relevant

work ("PRW") (*Id*., pp. 26-27), but he could perform the requirements of representative occupations

such as a price tag ticketer and routing clerk.  (*Id.*, p. 28).  The ALJ concluded that Plaintiff was not

disabled.  (*Id.*).

Plaintiff requested a review of the hearing decision by the Appeals Council, which denied

the request on June 26, 2018.  (*Id.*, pp. 5-9).

Plaintiff filed this action on August 27, 2018.  (ECF No. 1).  Both parties have filed briefs

(ECF Nos. 13, 15), and the case is before the undersigned for report and recommendation.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's

findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than

a preponderance, but it is enough that a reasonable mind would find it adequate to support the

Commissioner's decision.  *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011).  The Court must

affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v.

Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record to

support the Commissioner's decision, the Court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the Court

would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In

other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the Court must affirm the

ALJ's decision.  *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by

establishing a physical or mental disability that has lasted at least one year and that prevents him

from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th

Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A claimant must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982) (en banc) (abrogated on other grounds); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

On appeal, Plaintiff argues: (1) the ALJ failed to identify Plaintiff's bipolar disorder and chronic post-traumatic stress disorder ("PTSD") as severe impairments at step two; (2) the ALJ failed to give adequate reasons for rejecting the opinion evidence; (3) the ALJ failed to fully and fairly develop the record; and, (4) the ALJ's RFC assessment is not supported by substantial evidence. (ECF No. 13, pp. 8-17).

The undersigned is troubled by the ALJ's treatment of the opinion evidence and her failure

to fully and fairly develop the record.  For the reasons discussed below, it is recommended that the

Commissioner's decision to deny benefits be reversed and the case remanded for further

development of the record and reconsideration of Plaintiff's mental RFC.

## A.  Treatment of the Opinion Evidence

Plaintiff has a long history of suffering from mental health problems.  At the time of his

applications, the field office worker observed that Plaintiff "is emotional and cried during the entire

interview," and "I would say the [Plaintiff] has a severe social disorder."  (ECF No. 8, p. 248).

On September 9, 2016, Plaintiff reported to the State agency consultative examiner, Samuel

B. Hester, Ph.D., that he had been in mental health treatment most of his life since early childhood.

(*Id*. 8, pp. 362-63).  He was a slow learner and in special education classes, saw a school counselor,

and had speech therapy before dropping out of school in the 8th grade.  (*Id*.).  At the time of the

consultative exam, he reported insomnia, extreme anxiety, unprovoked tearfulness, and auditory and

visual hallucinations.  (*Id*.).  While he noted a family history of heart disease, it was felt his chest

pain was mostly caused by panic attacks.  (*Id*.).  He was being treated by his primary care physician,

Patrick Fox, M.D., with Fluoxetine (Prozac)[2], Zyprexa[3], and Trazodone[4].

Plaintiff reported problems with concentration and focus; hearing his name being called and

---

[2] Fluoxetine is selective serotonin reuptake inhibitor (SSRI) anti-depressant used to treat depression, panic, anxiety, or obsessive-compulsive disorders. https://www.drugs.com/fluoxetine.html (last accessed on July 19, 2019.)

[3] Zyprexa is an anti-psychotic medication used to treat schizophrenia and bipolar disorder. https://www.drugs.com/zyprexa.html (last accessed on July 19, 2019).

[4] Trazodone is an anti-depressant medication used to treat major depressive disorder. https://www.drugs.com/trazodone.html (last accessed on July 19, 2019).

seeing objects moving; sadness, unprovoked tearfulness, loss of motivation and drive, fatigue, suicidal ideations with no intent; generalized anxiety, with exacerbation in social situations; and, his history (slapping himself in the face for years) suggested some histrionic and borderline personality traits. (*Id*.). He gave a history of having been sexually abused on multiple occasions by multiple offenders. (*Id*., p. 363). He was very anxious and tearful throughout the examination, and Dr. Hester observed that "he does not appear to be improving with treatment," and he "needs to be in therapy and seeing a psychiatrist." (*Id*.).

Plaintiff also reported being terminated from his last job due to absenteeism caused by his anxiety and not being able to learn tasks as quickly as needed. (*Id*.). Dr. Hester noted "[h]e has a great deal of trust issues and social anxiety and would have issues with both coworkers and supervisors." (*Id*.). Plaintiff was appropriately dressed and groomed, with good hygiene, but his mood was both depressed and very anxious, and his affect was consistent with his mood. (*Id*.). Plaintiff was able to communicate effectively; his thought process with logical; his thought content did not demonstrate any overvalued ideas, bizarre obsessions or preoccupations; but, he did report both auditory and visual hallucinations. (*Id*., p. 365). Regarding cognition, Dr. Hester opined that Plaintiff "likely falls in the upper borderline range of intelligence." (*Id*., p. 366).

Dr. Hester diagnosed Plaintiff's mental impairments as panic disorder with agoraphobia[5], rule out PTSD, and depressive disorder. (*Id*., p. 367). He noted that Plaintiff's global assessment of functioning ("GAF") score was 48 (*Id*.), indicating serious symptoms or impairment. Am.

---

[5] Agoraphobia is a type of anxiety disorder in which one fears and avoids places or situations that might cause panic and make the individual feel trapped, helpless, or embarrassed. https://www.mayoclinic.org/diseases-conditions/agoraphobia/symptoms-causes/syc-20355987 (last accessed on July 22, 2019).

Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (DSM–IV–TR) 34 (4th ed., text rev. 2000).[6]

Regarding the effect Plaintiff's mental impairments have on his day-to-day adaptive functioning, Dr. Hester noted that Plaintiff was able to drive but rarely did, could perform most activities of daily living ("ADLs") autonomously, but he did not do his own shopping nor pay bills unless accompanied, and he did not participate in social groups. (*Id*., p. 368).  Dr. Hester reported that Plaintiff has a limited capacity to communicate and interact in a socially adequate manner; the capacity to communicate in an intelligible, but not always effective, manner; he cannot cope with the mental demands of basic work tasks; has a limited ability to attend to and sustain concentration on basic tasks; has the ability to sustain persistence in completing tasks; but, he cannot complete work tasks within an acceptable time frame.  (*Id*.).

On September 15, 2016, a non-examining State agency medical consultant, Kevin Santulli, Ph.D., reviewed the evidence of record, including Dr. Hester's report.  Dr. Santulli diagnosed affective disorders and anxiety-related disorders, with mild restriction of ADLs, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (*Id*., p. 69).  Dr. Santulli concluded Plaintiff had the ability to perform work where interpersonal contact is incidental to the work performed, e.g., assembly work; where the complexity of tasks is learned and performed by rote, with few variables, and requiring little judgment; and, where supervision required is simple, direct, and concrete.  In other words, unskilled

---

[6] We recognize that the DSM-V was released in 2013, replacing the DSM-IV.  The DSM-V has abolished the use of GAF scores to "rate an individual's level of functioning because of 'its conceptual lack of clarity' and 'questionable psychometrics in routine practice.'"  *Alcott v. Colvin*, No. 4:13BCVB-01074-NKL, 2014 WL 4660364, at *6 (W.D. Mo. Sept. 17, 2014) (citing *Rayford v. Shinseki,* 2013 WL 3153981, at *1 n. 2 (Vet.App. 2013) (quoting the DSM-V)).

work. (*Id*., p. 75).

On February 22, 2017, at the reconsideration level, another non-examining State agency medical consultant, Abesie Kelly, Ph.D., reviewed the evidence of record. Dr. Kelly diagnosed depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders. (*Id*., p. 88). She opined Plaintiff had the same mild to moderate functional limitations as assessed by Dr. Santulli, and she affirmed the initial rating of an ability to perform unskilled work. (*Id*., pp. 88, 91-93). Dr. Kelly noted Plaintiff had reported increased anxiety and PTSD, and that his anxiety, depression, and coping skills were worse. (*Id*., p. 93). She also noted updated medical evidence indicating continued treatment for bipolar disorder, and updated self-report forms in which Plaintiff complained of problems with memory, concentration, completing tasks, understanding, following instructions, and getting along with others, but she discounted this information finding that Plaintiff attends to personal care, needs no reminders about grooming[7], prepares simple meals, drives, goes out alone, shops, and manages money. (*Id*.).

Plaintiff's treating psychiatrist, Terrell Bishop, M.D., completed a Medical Source Statement on June 21, 2017. (*Id*., pp. 458-461). Dr. Bishop appears to have misunderstood the format for the check-box options on the form[8], as he left blank the "yes" or "no" for whether the ability to understand, remember, and carry out instructions is affected by the impairment, but he then checked "slight" restrictions for the mental activities of understanding and remembering short, simple

---

[7] Plaintiff did report needing to be reminded to take his medications. (*Id*., p. 284).

[8] The form asks whether an individual's *ability* to understand, remember, and carry out instructions is affected by the impairment; and, if so, then the options to describe the individual's *restrictions* include: none, slight, moderate, marked, and extreme. (*Id*., pp. 458-459) (emphasis added).

instructions, carrying out short, simple instructions, and understanding and remembering detailed instructions, and he checked "none" for restrictions to carry out detailed instructions and to make judgments on simple work-related decisions. (*Id.*, p. 458). It reasonably appears that Dr. Bishop confused "ability" and "restrictions" in the form, and that he actually thought Plaintiff has only a "slight" *ability* (not *restriction*) to understand, remember, and carry out short, simple instructions, but no ("none") *ability* (not *restriction*) to carry out detailed instructions and to make judgments on simple work-related decisions.

This same confusion continues in the next section of the form in which Dr. Bishop comments on the Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting, and he checks "slight" for the *ability* (not *restriction*) of interacting appropriately with the public, and no ("none") *ability* (not *restriction*) to respond appropriately to work pressures in a usual work setting. (*Id.*, p. 459). Dr. Bishop then adds "trouble with change," and he states "I am convinced the patient is totally disabled." (*Id.*). He checks that Plaintiff cannot manage benefits in his own best interest and makes the recommendation for "assisted living" (underlined twice). (*Id.*, p. 460).

At the beginning of the administrative hearing, Plaintiff's counsel voiced objections to Dr. Bishop's mental RFC "because I don't think he read the instructions carefully when he filled out the form." (*Id.*, p. 37). The ALJ allowed Plaintiff the opportunity to have Dr. Bishop complete another form. (*Id.*, p. 38). The ALJ commented that Dr. Hester was of the opinion that Plaintiff cannot cope with the mental demands of basic work tasks and cannot complete work tasks within an acceptable time frame, however, the DDS reviewers disagreed with that, "and *that is why I definitely want a clarification* from Exhibit 14F, the treating provider [Dr. Bishop]." (*Id.*, pp. 39-40) (emphasis

added).  Unfortunately, Dr. Bishop did not cooperate in providing another completed medical source

statement form or to otherwise provide clarification.  (ECF No. 13, p. 15).

On December 11, 2017, just two days before the administrative hearing, Plaintiff's primary

care physician, Patrick Fox, M.D., prepared a Medical Source Statement.  (ECF No. 8, pp. 677-680).

Dr. Fox opined that Plaintiff's ability to understand, remember, and carry out instructions was

affected by his mental impairments, and he indicated Plaintiff had marked restriction of his ability

to understand and remember short, simple instructions; moderate restriction of his ability to carry

out short, simple instructions; and, extreme restriction of his ability to understand and remember

detailed instructions, carry out detailed instructions, and the ability to make judgments on simple

work-related decisions.  (*Id*., p. 677).  Dr. Fox also opined that Plaintiff's ability to respond

appropriately to supervision, co-workers, and work pressures in a work setting are affected by his

mental impairments.  (*Id*., p. 678).  Specifically, Dr. Fox indicated marked restriction of Plaintiff's

ability to interact appropriately with the public, supervisors, and co-workers, and extreme restriction

of his ability to respond appropriately to work pressures in a usual work setting and to changes in

a routine work setting.  (*Id*.).  Dr. Fox also noted Plaintiff's PTSD caused agoraphobia and severe

impairment of functioning.  (*Id*.).

The ALJ addressed each of these opinions in her written decision.  (ECF No. 8, pp. 24-26).

Generally, a treating physician's opinion is given more weight than other sources in a

disability proceeding.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Indeed, when the treating

physician's opinion is supported by proper medical testing, and is not inconsistent with other

substantial evidence in the record, the ALJ must give the opinion controlling weight.  *Id*.  "However,

[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical

-10-

assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

First, the ALJ gave little weight to Dr. Fox's opinions regarding the functional restrictions caused by Plaintiff's mental impairments.  The ALJ discounted Dr. Fox's opinions because he is a family practice physician and not a mental health specialist; his opinions are inconsistent with his own treatment notes; and, he appears to have relied extensively on Plaintiff's subjective complaints, as well as Dr. Bishop's ultimate opinion.  (ECF No. 8, p. 24).

As the regulations state, a treating source is "most able to provide a detailed, longitudinal picture" of a claimant's impairments and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  It is true that Dr. Fox is a family practice physician and not a mental health specialist, but Dr. Fox had a longitudinal treating relationship of over two years with Plaintiff.  He prescribed psychotropic medications to treat Plaintiff's mental impairments and regularly monitored their effectiveness.  He referred Plaintiff to mental health specialists, and he continued to observe and treat Plaintiff for his mental health symptoms.  While the ALJ stated her conclusion that Dr. Fox's opinions were inconsistent with his own treatment notes, the ALJ does not identify and discuss any particular inconsistencies to support that conclusion.  The ALJ has not given "good reasons" for disregarding Dr. Fox's opinions.

Next, the ALJ gives little weight to the opinions of Plaintiff's treating psychiatrist, Dr.

Bishop.  (ECF No. 8, p. 24).  As noted above, Dr. Bishop's Medical Source Statement dated June

21, 2017 reflects the doctor's apparent misunderstanding of the format of the form he completed.

The ALJ seemed to acknowledge this when she stated "that is why I definitely want a clarification."

(*Id*., p. 40).  Nevertheless, and without obtaining any clarification, the ALJ stated in her decision that

Dr. Bishop expressed only findings of *slight* to *no* limitations in mental functioning, thus rendering

his opinion that Plaintiff was totally disabled internally inconsistent.  This was error.  It is clear to

the undersigned that Dr. Bishop confused "ability" and "restrictions" when completing the form, and

that he actually thought Plaintiff has only a "slight" *ability* to understand, remember, and carry out

short, simple instructions, and no *ability* to carry out detailed instructions and to make judgments

on simple work-related decisions.  It is also clear that Dr. Bishop thought Plaintiff has only the

"slight" *ability* of interacting appropriately with the public, and no *ability* to respond appropriately

to work pressures in a usual work setting.  Such findings are consistent with Dr. Bishop's additional

comments that Plaintiff has "trouble with change," that "I am convinced the patient is totally

disabled," and his recommendation for "assisted living."

Early in the administrative proceedings DDS sent Plaintiff to Dr. Hester for a mental

diagnostic evaluation.  Among Dr. Hester's findings were that Plaintiff cannot cope with the mental

demands of basic work tasks; he has a limited ability to attend to and sustain concentration on basic

tasks; and, he cannot complete work tasks within an acceptable time frame.  The ALJ only accorded

Dr. Hester's opinions some weight, finding that his opinions predated the Plaintiff's medication

management and are not consistent with Plaintiff's previous work history.  (ECF No. 8, p. 25).

As Plaintiff points out (ECF No. 13, p. 13), Dr. Fox had been treating Plaintiff with three

psychotropic medications prior to Dr. Hester's evaluation, so the ALJ's statement that Dr. Hester's

evaluation and opinion predates Plaintiff's medication management is simply not correct. In fact,

Dr. Hester specifically noted that Plaintiff had been in mental health treatment most of his life, was

then taking Fluoxetine, Zyprexa, and Trazodone, and "he does not appear to be improving with

treatment." (ECF No. 8, pp. 362-63). Dr. Hester further noted that Plaintiff had been terminated due

to absenteeism caused by his anxiety and not being able to learn tasks as quickly as needed. (*Id*., p.

364).

The record also shows that Plaintiff's mental condition deteriorated after losing his

employment, and that subsequent medication management did little to improve Plaintiff's ability to

function or manage his mental symptoms. For example, two months after Dr. Hester's evaluation,

it was noted on November 7, 2016 that "[m]eds are going well," but an additional medication,

Abilify[9], was added to Plaintiff's treatment regimen due to Plaintiff having trouble sleeping,

hallucinations, and delusions. (*Id*., pp. 619-22). On December 19, 2016 Plaintiff reported still

feeling depressed, and that Prozac was not helping much. His depression, anxiety, manic symptoms,

and psychotic symptoms (hallucinations with paranoid delusions) were all noted to be severe.

Lexapro[10] was added to his medications. (*Id*., pp. 611-14). His medications were changed again on

January 2, 2017 because Plaintiff was not sleeping and still depressed. (*Id*., p. 605). Plaintiff then

saw Dr. Bishop for the first time on March 22, 2017. Dr. Bishop diagnosed generalized anxiety

---

[9] Abilify is an anti-psychotic medication used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar I disorder (manic depression). https://www.drugs.com/abilify.html (last accessed on July 24, 2019).

[10] Lexapro is a selective serotonin reuptake inhibitor (SSRI) anti-depressant used to treat anxiety and major depressive disorder in adults. https://www.drugs.com/lexapro.html (last accessed on July 24, 2019.)

disorder and chronic PTSD, and he prescribed Klonopin[11], Trileptal[12], and Lexapro.  (*Id*., p. 579).

In a visit with Dr. Fox on June 6, 2017, Plaintiff was diagnosed with bipolar disorder, and "overall

improvement" was noted after Dr. Bishop started Plaintiff on Latuda[13].  (*Id*., p. 567).  However,

three weeks later, on June 27, 2017, Plaintiff's assessment was bipolar I disorder, depressed (severe),

with psychotic behavior, and panic disorder.  (*Id*., p. 556).  On July 24, 2017, Plaintiff again reported

depression and was assessed with bipolar I disorder, depressed (moderate), and he stated that he was

doing better on Latuda but stopped due to insurance not covering it.  (*Id*., p. 555).  And, a depression

screening on August 21, 2017, nearly one year after Dr. Hester's consultative exam, was positive for

anhedonia, feeling down, depressed or hopeless.  (*Id*., p. 545).

Thus, the record does not substantially support the ALJ's stated reasons for discounting Dr.

Hester's opinions.

Not only did the ALJ discount the opinions of Plaintiff's treating and examining physicians,

she also discounted the opinions of the non-examining State agency medical consultants, Drs.

Santulli and Kelly, giving their opinions little weight for not being consistent with the overall

evidence of record.  (*Id*., p. 26).

Of course, an "ALJ must not substitute his opinions for those of the physician."  *Ness v.*

---

[11] Klonopin is a benzodiazepine and is used to treat panic disorder (including agoraphobia) in adults.  https://www.drugs.com/klonopin.html (last accessed on July 24, 2019).

[12] Trileptal is an anti-convulsant or anti-epileptic medicine used either alone or with other medicines to treat partial seizures.  https://www.drugs.com/trileptal.html (last accessed on July 24, 2019).

[13] Latuda is an anti-psychotic medicine used to treat schizophrenia and episodes of depression associated with bipolar disorder in adults.  https://www.drugs.com/latuda.html (last accessed on July 24, 2019).

*Sullivan*, 904 F.2d 432,435 (8th Cir. 1990) (citing *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989)); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports.").  Having discounted the opinions of every single treating, examining, and consulting physician in this case, the ALJ's determination that Plaintiff retained the mental RFC to perform simple, routine, and repetitive tasks with interpersonal contact that is incidental to the work performed, wherein he can make simple work-related decisions, concentrate, persist, and maintain pace with normal breaks, with supervision that is simple, direct, and concrete, is tantamount to the ALJ "playing doctor," a practice forbidden by law.  *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")).

Consideration of the record as a whole does not reveal a lack of support for the opinions of Drs. Fox, Bishop, and Hester, nor does the record show substantial inconsistencies within these doctors' treating notes, or with other evidence of record, to detract from their ultimate findings.  To the contrary, their opinions regarding Plaintiff's mental limitations are consistent with each other and the other evidence of record.  There are no other medical or psychiatric assessments of Plaintiff's mental limitations that are supported by superior or more thorough medical evidence.  Therefore, because the ALJ erroneously discounted the opinions of these treating and examining physicians, this matter should be remanded for reconsideration of the medical opinion evidence regarding Plaintiff's mental limitations and a redetermination of Plaintiff's mental RFC.

## B. Development of the Record

The ALJ has a duty to fully and fairly develop the record. *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. *Vossen*, 612 F.3d at 1016. The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

As previously discussed, there was some confusion regarding the meaning of Dr. Bishop's June 21, 2017 Medical Source Statement. Instead of interpreting the check-box responses consistently with Dr. Bishop's handwritten comments that "I am convinced the patient is totally disabled" and his recommendation for "assisted living," the ALJ chose to interpret the check-box responses in a manner that seemingly, and incorrectly, supported her mental RFC finding.

The significance of Dr. Bishop's opinions was recognized by the ALJ at the beginning of the administrative hearing when she noted that the non-examining DDS reviewers disagreed with the opinions of the consultative examiner, Dr. Hester, "and that is why I definitely want a clarification from [Dr. Bishop], the treating provider." (*Id.*, p. 40). The ALJ permitted Plaintiff to ask Dr. Bishop to complete another form, but Dr. Bishop refused to do so. Through his counsel, Plaintiff then contacted the ALJ to inform her of Dr. Bishop's refusal to provide clarification, and he requested that a new mental status consultative examination be scheduled to develop the record. (ECF No. 13, pp. 15-16). Despite previously stating that she definitely wanted clarification, the ALJ did not order an additional mental status consultative exam. (*Id.*, p. 16).

The regulations specifically provide for ordering consultative examinations when "a source

is not productive, is uncooperative, or is unable to provide certain tests or procedures." 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2).

The ALJ expressed concern about the weight to be given to the consultative exam findings of Dr. Hester received early in the administrative process. (ECF No. 8, pp. 39-40). She stated that she definitely wanted clarification from the treating provider, Dr. Bishop. (*Id*., p. 40). Then, rather than ordering a more current mental status consultative examination upon learning that Dr. Bishop refused to provide clarification, the ALJ in her decision both improperly discounted Dr. Hester's consultative examination findings and incorrectly interpreted Dr. Bishop's check-box responses to support her mental RFC determination. Doing so was clearly prejudicial to the Plaintiff, and the undersigned cannot conclude that the ALJ fulfilled her duty to fully and fairly develop the record.

On remand, the ALJ should order a current mental status consultative exam of the Plaintiff, complete with a mental RFC assessment.

## IV.  Conclusion

For the reasons and upon the authorities discussed above, the undersigned recommends reversing the Commissioner's decision and remanding the case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). Upon remand, the ALJ should order a current mental status consultative exam of the Plaintiff, complete with a mental RFC assessment, and the ALJ should then reconsider the medical opinion evidence in determining the Plaintiff's mental RFC.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

DATED this 24th day of July 2019.

/s/ Mark E. Ford

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE